**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

KRISTINA L.,[1]
Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

Case No. 1:25-cv-708
Litkovitz, M.J.

**ORDER**

Plaintiff Kristina L. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's statement of errors (Doc. 10), the Commissioner's response (Doc. 11), and plaintiff's reply (Doc. 12).

**I. Procedural Background**

Plaintiff protectively filed an application for DIB in March 2023, alleging an onset date of disability of August 23, 2018,[2] due to carpal tunnel syndrome, a fused thumb, and osteoarthritis. (Tr. 17, 258-59, 291). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) William Reamon. Plaintiff and a vocational expert (VE) appeared via video conference and testified at the hearing on September 30, 2024. (Tr. 58-95). On October 23, 2024, the ALJ issued a decision denying plaintiff's application. (Tr. 14-57). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 28, 2025. (Tr. 1-6).

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.
[2] Plaintiff's application initially alleged an onset date of February 28, 2019, which was subsequently changed. (*See* Tr. 133, 143, 181, 186, 264, 287, 308, 326).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2023.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of August 23, 2018 through her date last insured of December 31, 2023 (20 CFR 404.1571 *et seq*).
>
> 3. Through the date last insured, [plaintiff] had the following severe impairments: right thumb, hand, and wrist osteoarthritis; left thumb degenerative joint disease status-post hemiarthroplasty and DeQuervain's release; bilateral carpal tunnel syndrome, status-post left carpal tunnel release surgery in February 2022 and right carpal tunnel release surgery in May 2022; a depressive disorder; and an anxiety disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] find[s] that, through the date last insured, [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: keep pushing and pulling with the bilateral upper extremities to only occasional; eliminate any ladder, rope, or scaffolds climbing; allow occasional crawling; allow occasional performance of handling and fingering with the left hand; allow frequent performance of handling and fingering with the right hand; eliminate any exposure to hazards such as unprotected heights and close proximity to unguarded, dangerous moving machinery; limited to simple tasks; and could frequently interact with the general public, coworkers, and supervisors.
>
> 6. [Plaintiff] has no past relevant work (20 CFR 404.1565).
>
> 7. [Plaintiff] was born [in] . . . 1975 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

> 8. [Plaintiff] has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR 404.1568).
>
> 10. Through the date last insured, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[3]
>
> 11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from August 23, 2018, the alleged onset date, through December 31, 2023, the date last insured (20 CFR 404.1520(g)).

(Tr. 20-51).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as information clerk (46,000 jobs nationally), fundraiser II (25,000 jobs nationally), and furniture rental consultant (45,000 jobs nationally). (Tr. 50, 90).

Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1004 (6th Cir. 2025) ("Even when an ALJ's decision is supported by substantial evidence, we will reverse the decision if we find that the ALJ failed to follow the applicable procedural regulations.") (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)).

**D. Specific Errors**

Plaintiff first argues that the ALJ erred by failing to find her plantar fasciitis of the right foot and right knee pain and chondromalacia to be severe impairments or explicitly identify them as non-severe. Relatedly, plaintiff argues that the ALJ erred by failing to consider these impairments, severe or otherwise, in his residual functional capacity (RFC) determination. Finally, plaintiff argues that the ALJ erred at step 5 of the sequential evaluation process because the occupations identified by the VE conflict with the ALJ's RFC determination.[4]

1. <u>Plaintiff's right foot plantar fasciitis and right knee pain and chondromalacia</u>

[4] Plaintiff also raises error by the ALJ in failing to account for plaintiff's use of a brace for her upper extremity impairments. (*See* Doc. 10 at PAGEID 1749). This argument, however, made in a single sentence and without reference to supporting authority, is undeveloped, and the Court does not consider it. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

Plaintiff admits that the ALJ discussed these impairments[5] but argues that his decision failed to make clear whether they were or were not severe. Plaintiff points out that, when discussing other impairments, the ALJ referenced deficits in specific regulatory criteria (i.e., objective medical evidence from an acceptable medical source, medical signs and laboratory findings, or durational requirement) to demonstrate why such impairments were not severe. Plaintiff highlights various evidence supporting the conclusion that her right foot plantar fasciitis and right knee chondromalacia were severe prior to December 31, 2023 (plaintiff's date last insured (DLI)).

The Commissioner argues in response that it is evident that the ALJ found plaintiff's plantar fasciitis and right knee chondromalacia to be non-severe because he discussed but omitted them from his step 2 finding—further noting that plaintiff implicitly concedes this point in her briefing (*see* Doc. 10 at PAGEID 1745 ("[T]he ALJ erred in finding that plaintiff's right knee pain and chondromalacia were non-severe impairments at Step 2.")). Regardless, the Commissioner argues that the ALJ extensively discussed these impairments, and his decision explicitly states that he considered both severe and non-severe impairments in his RCF determination.

In reply, plaintiff argues that to find these impairments non-severe, the ALJ was required to "explain whether this finding [wa]s due to insufficient evidence that the condition is a medically determinable impairment or d[id] not otherwise meet the duration or severity requirement of a severe impairment at Step 2." (Doc. 12 at PAGEID 1766). Plaintiff also

[5] The Commissioner argues that right knee pain, in and of itself, is not an impairment. *See Wilson v. Kijakazi*, No. 5:20-cv-02414, 2022 WL 4616979, at *6 (N.D. Ohio Sept. 30, 2022) ("[P]ain is considered a symptom of an underlying impairment going to the severity of the impairment and is not itself an impairment. . . ."). Plaintiff does not address this in reply. The Court agrees with the Commissioner and does not consider right knee pain to be a separate impairment.

reiterates her position that the ALJ did not take into account these impairments in the RFC determination. To the extent the ALJ did discuss them, plaintiff argues that he mischaracterized the related evidence.

The regulations define a "severe" impairment or combination of impairments as one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions and the mental abilities to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1522(b). An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." Social Security Ruling (SSR) 85-28,[6] 1985 WL 56856, at *3 (Jan. 1, 1985). "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that the diagnosis of an impairment "says nothing about the severity of the condition").

The claimant's burden of establishing a "severe" impairment at step 2 is "*de minimis*." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 325 (6th Cir. 2015) (citing *Higgs*, 880 F.2d at 862). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (quoting *Higgs*, 880 F.2d at 862).

---

[6] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

Once "an ALJ determines that one or more impairments is severe, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." *Singleton v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 1028, 1033 (S.D. Ohio 2015) (internal quotation marks omitted) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996))). Where the ALJ finds at least one severe impairment, the ALJ's failure to find additional severe impairments at step 2 is not reversible error where the ALJ considers the claimant's impairments—both severe and non-severe—in the remaining steps of the disability determination. *Maziarz v. Sec'y of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk*, 253 F. App'x at 583-84. "So long as the ALJ finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or non-severe is 'legally irrelevant.'" *Deaner v. Comm'r. of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

The ALJ's decision as it concerns plaintiff's plantar fasciitis and right knee chondromalacia is based on substantial evidence. First, plaintiff cites no authority for the proposition that the ALJ was required to articulate his determination of severe versus non-severe impairments in the manner she advocates. In any event, the decision makes clear that the ALJ found these impairments to be non-severe; and any error in the ALJ's severity determination as to these impairments is harmless because the ALJ properly considered them in assessing plaintiff's RFC. Summarized below is the pre-DLI evidence relied upon by plaintiff to demonstrate the severity of her plantar fasciitis and right knee chondromalacia[7] alongside the ALJ's assessment of that same evidence.

[7] Plaintiff also points generally and without particular citation to four exhibits containing over 300 pages of records as

| PLANTAR FASCIITIS EVIDENCE | | |
|---|---|---|
| **Record** | **Summary** | **ALJ decision (Tr. 22-23)** |
| May 1, 2023, Orthopedic Associates (Tr. 1158-66) | Plaintiff reported experiencing pain since a 2022 foot surgery, with the current level being 7/10. Plaintiff received a plantar fascia steroid injection. Plaintiff exhibited tenderness and guarding to the medial calcaneal tubercle and proximal aspect of the medial band of the plantar fascia. Plaintiff was placed in a boot for two weeks, after which the medical source expected plaintiff would stop the boot and start physical therapy. | The ALJ acknowledged right foot heal pain, positive x-ray findings, and tenderness noted in this record; but he also noted that the x-ray showed "soft tissue density . . . within normal limits and . . . no acute fractures, joint dislocations, or subluxations" and that her strength and sensation were normal. |
| May 15, 2023, Orthopedic Associates (Tr. 1168-76) | Plaintiff reported 80% improvement with 0/10 pain and only mild tenderness. | The ALJ highlighted the significant improvement from the May 1, 2023 appointment, including the mild tenderness, pain at a 0/10, and 5/5 strength. The ALJ noted that plaintiff was prescribed an orthotic. |
| November 14, 2023, Orthopedic Associates (Tr. 1477-87) | Plaintiff received a plantar fascia steroid injection, reported mild tenderness to the medial calcaneal tubercle and proximal aspect of the medial band of plantar fascia, and was given a home exercise program, an orthotic recommendation, and limitations against high impact exercise and barefoot walking. | The ALJ noted that plaintiff reported pain at only 2/10 and exhibited only mild tenderness and normal strength. |

| RIGHT KNEE CHONDROMALACIA | | |
|---|---|---|
| November 20, 2023, Proscan Imaging (Tr. 1430-31) | An MRI showed patellofemoral chondromalacia with penetrating chondral erosion of the lateral trochlea, full cartilage loss along the lateral patellar facet, and high-grade chondral fissuring along the medial trochlea and medial patellar facet; and moderate infrapatellar Hoffitis. | The ALJ noted the positive MRI findings but also noted that there was no meniscal pathology or subchondral edema. |

supporting a history of knee complaints. Without more detail, these references do not support plaintiff's position. (*See* Doc. 10 at PAGEID 1745, referring to Exs. 7F, 23F, 31F, and 33F).

| | | |
|---|---|---|
| November 27, 2023, Suresh Nayak, M.D. (Tr. 1432-37) | Plaintiff reported chronic right knee discomfort following remote knee surgery and that she had fallen on this knee about four weeks prior. Plaintiff reported limited improvement with a brace and injection. Dr. Nayak reviewed the MRI, recommended continuing meloxicam and the brace, and ordered outpatient physical therapy. Dr. Nayak did not schedule follow-up treatment and recommended further treatment on an as-needed basis. | The ALJ noted that plaintiff reported pain, tenderness, reduced range of motion, patellar grinding, and antalgic gait; but he also noted 5/5 hamstring strength, normal reflexes, and no swelling or deformity. The ALJ further noted that the record did not show ongoing right knee complaints or surgery after this appointment. |

As reflected above, the ALJ weighed the same pre-DLI evidence plaintiff points to in her statement of errors. For plantar fasciitis, the ALJ highlighted the overall improvement in plaintiff's condition reflected in those records. For right knee chondromalacia, the ALJ focused on the visit with Dr. Nayak on November 27, 2023, which recorded that plaintiff had fallen and injured her knee four weeks prior to the visit. The ALJ noted that plaintiff did not pursue surgery or other follow-up knee treatment thereafter. The ALJ also discussed an August 2023 Cincy Arthritis record, not cited by plaintiff, that reflected "[n]ormal" musculoskeletal findings—in particular, no tenderness, swelling, effusion, or limitation to range of motion in her knees or feet. (Tr. 23, referring to Tr. 1223).

After weighing this evidence, the ALJ stated that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when [he assessed] the claimant's residual functional capacity." (Tr. 23). *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) ("The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § [404.1545(e)] and SSR 96-8p."). All of the foregoing constitutes substantial evidence supporting the ALJ's RFC

determination as it relates to plaintiff's plantar fasciitis and right knee chondromalacia. The Court will not reweigh the evidence. *See id.* at 849 (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)) ("Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion."). Plaintiff fails to identify records supporting any particular limitation relevant to her conditions prior to the DLI that was not included in the ALJ's RFC determination. The Court concludes that the ALJ properly considered plaintiff's plantar fasciitis and right knee chondromalacia when determining her RFC.

Plaintiff urges the Court to find that the ALJ mischaracterized the evidence by reference to several records from after the DLI. (*See* Doc. 10 at PAGEID 1743-45, referring to Tr. 1447-75 (April 2024 Orthopedic Associates record), 1502 (March 2024 MRI), 1535-38 (April 2024 Beacon Orthopaedic & Sports Medicine record)). But "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004). It is relevant only to the extent that "it illuminates [the claimant's] health before the expiration of [her] insured status" and is "supported by relevant, objective evidence that was contemporaneous to the insured period." *Stark v. Comm'r of Soc. Sec.*, No. 5:15-cv-477, 2016 WL 1077100, at *6 (N.D. Ohio Mar. 18, 2016) (quoting *Nagle v. Comm'r of Soc. Sec.,* 191 F.3d 452 (6th Cir. 1999)). Plaintiff fails to demonstrate that these post-DLI records satisfy that standard.

For the foregoing reasons, plaintiff's assignments of error concerning her plantar fasciitis and right knee chondromalacia are overruled.

2. Step 5

Plaintiffs next alleges conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT). Plaintiff argues that the requirements for the information clerk

occupation (frequent handling and fingering and constant talking and hearing) conflict with the ALJ's RFC limitations to occasional handling and fingering with the right upper extremity and frequent interaction with the public, coworkers, and supervisors. Plaintiff also argues that the requirements for fundraiser II (frequent handling and fingering) conflict with the ALJ's RFC limitations to occasional handling and fingering with the right upper extremity. Finally, plaintiff argues that the requirements for the furniture rental consultant occupation (level 3 reasoning) conflict with the ALJ's RFC limitation to simple tasks, which corresponds to level 1 reasoning.

The Commissioner argues that the VE specifically testified that a *bilateral* limitation to occasional handling and fingering would have eliminated the information clerk and fundraiser II occupations, but a *left-hand* limitation to occasional handling and fingering for a right-handed plaintiff (Tr. 68) would not. (*See* Tr. 89-90). The Commissioner also argues that the ALJ specifically asked the VE whether his testimony was consistent with the DOT and Selected Characteristics of Occupations (SCO) and resolved identified conflicts.

In reply, plaintiff cites *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430 (6th Cir. 2016), for the proposition that "an ALJ might reversibly err by failing to inquire about or resolve a conflict between the DOT reasoning levels and a simple-tasks limitation." *Id.* at 436.

At step five of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's [RFC] (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden through reliance on a VE's testimony in response to a hypothetical question. To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the VE must accurately reflect the claimant's physical and mental limitations. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516

(6th Cir. 2010); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); and *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

In this case, as noted above, the ALJ found that:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: keep pushing and pulling with the bilateral upper extremities to only occasional; eliminate any ladder, rope, or scaffolds climbing; allow occasional crawling; allow occasional performance of handling and fingering with the left hand; allow frequent performance of handling and fingering with the right hand; eliminate any exposure to hazards such as unprotected heights and close proximity to unguarded, dangerous moving machinery; limited to simple tasks; and could frequently interact with the general public, coworkers, and supervisors.

(Tr. 27). Based on this RFC, the vocational expert testified that plaintiff could perform unskilled, light jobs including information clerk, fundraiser II, and furniture rental consultant. (Tr. 89-90). The ALJ specifically asked the VE whether his testimony was consistent with the DOT; and the VE responded that his "testimony [wa]s consistent with the [DOT] and . . . [SCO,]" but that his opinions on "limitations regarding the differentiation of the use of the upper extremities" and "social interactions" were based on his "education and experience as a Vocational Counselor because they [we]re not specifically addressed in either publication." (Tr. 91).

"In this circuit, an ALJ satisfies h[is] duty to inquire if [ ]he asks the VE whether the VE's testimony is consistent with the DOT and receives an affirmative response." *Joyce*, 662 F. App'x at 435.[8] *See also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("[T]he ALJ asked if there was a conflict. The vocational expert testified that there was not. Martin did not bring the vocational expert's mistake to the ALJ's attention. Nothing in SSR 00-4p[9] places an

---

[8] Plaintiff's attempt to distinguish *Joyce* is unavailing. The court in *Joyce* found that the ALJ procedurally erred because, unlike here, he *did not* ask about any potential conflict. *Id.* at 435-36.

[9] SSR 00-4p states in relevant part: "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at *2 (Dec. 4, 2000).

affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.") (citations to the record omitted) (footnote added); *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (following *Martin*, where the ALJ did not inquire as to conflicts, but the plaintiff's counsel asked the VE about his source (the DOT) and did not raise any conflict); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (following *Martin*, where the ALJ asked whether there were "any apparent discrepancies" between the DOT and the VE testimony (there were none), and the plaintiff's counsel had an opportunity for cross examination). That is exactly what occurred here. (*See* Tr. 91). Plaintiff's representative then cross-examined the VE but did not raise any of the conflicts identified in her statement of errors. (Tr. 92-94). Plaintiff's assignment of error regarding the ALJ's determination at step 5 of the sequential evaluation is also overruled.

**III. Conclusion**

Based on the foregoing, plaintiff's Statement of Errors (Doc. 10) is **OVERRULED,** the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 8/3/2026

Karen L. Litkovitz
United States Magistrate Judge